**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Deanna Marie Rivera, | No. CV-18-02692-PHX-SPL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is Defendant's denial of Plaintiff's applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income under the Social Security Act ("Act"). Plaintiff filed a Complaint (Doc. 1) seeking judicial review of the denial, and the Court now considers Plaintiff's Opening Brief (Doc. 18, "Pl. Br."), Defendant's Response Brief (Doc. 26, "Def. Br."), Plaintiff's Reply Brief (Doc. 29), and the Administrative Record (Doc. 11, "R."). Because the Court finds legal error in the decision, it reverses and remands for further administrative proceedings.

**I.    BACKGROUND**

Plaintiff filed an application for Title II Disability Insurance Benefits on December 28, 2016 and an application for Title XVI Supplemental Security Income on February 2, 2017. (R. at 13.) Both applications alleged disability beginning July 28, 2016.[1] (*Id.*)

---

[1] Prior to filing the present applications, Plaintiff filed an application for Title II benefits on November 4, 2011, which was denied at the initial and reconsideration levels. (R. at 156.) A hearing was held before the same ALJ here, who found Plaintiff not disabled. (R at 156–168.) The Appeals Council remanded (R. at 178–180) and a re-hearing was held.

Defendant denied them initially on May 20, 2017 and upon reconsideration on July 19, 2017. (*Id.*) Plaintiff requested a hearing before an administrative law judge ("ALJ") which was held on February 28, 2018. (*Id.*) On April 4, 2018, the ALJ issued an unfavorable decision (R. at 13–32), which the Appeals Council upheld on June 26, 2018 (R. at 1–4).

The ALJ found Plaintiff had "severe" impairments of fibromyalgia, diabetes, obesity, carpal tunnel syndrome, lumbar and cervical degenerative disc disease, and chronic pain syndrome. (R. at 18.) The ALJ found Plaintiff could perform sedentary work except that she could only "occasionally and frequently lift and carry a maximum of 10 pounds; stand and walk a maximum of two hours in an eight-hour day; sit a maximum of six hours in an eight-hour day; occasionally climb ladders, ropes, and scaffolding; occasionally crawl; frequently handle, finger, and feel with the right hand; no exposure to dangerous machinery or unprotected heights." (R. at 26.) The ALJ gave "partial" weight to opinions of state agency examining and non-examining sources and "little" weight to opinions of Plaintiff's treating sources. (R. at 24, 28–29.) The ALJ also discredited Plaintiff's testimony. (R. at 27.) Based on the RFC and testimony from the vocational expert ("VE"), the ALJ concluded Plaintiff was not "disabled" because she could perform work as an addresser, document preparer, and call-out operator. (R. at 30–31, 147–150.)

Plaintiff alleges the ALJ erred by (1) improperly discrediting medical opinions from two treating sources and two examining sources (Pl. Br. at 7–25); (2) improperly discrediting her own testimony (Pl. Br. at 26–28); (3) identifying jobs she could perform that did not exist in significant numbers (Pl. Br. at 28); and (4) failing to develop the record on data relied upon by the vocational expert (Pl. Br. at 28).

///

---

The ALJ again found Plaintiff not disabled. (R. at 185–195.) While res judicata imposes a presumption of continuing non-disability absent "changed circumstances," *see Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), the ALJ found Plaintiff overcame the presumption here by changing age categories, showing impairments not previously in evidence or considered severe, and showing other impairments previously considered severe that are not in evidence or current treatment. (R. at 15, 17.) The ALJ also found the record contained "new and material evidence." (R. at 17.)

## II. LEGAL STANDARD

The Court only reviews issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court sets aside the decision only when it is based on legal error or not supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). "Substantial evidence" is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* at 674–75. The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* at 675. The Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [she or] he did not rely." *Id.* The Court will not reverse for an error that is "inconsequential to the ultimate nondisability determination" or where the ALJ's "path may reasonably be discerned, even if the [ALJ] explains [her] decision with less than ideal clarity." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citing *Alaska Dept. of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004)).

To determine whether a claimant is "disabled" under the Act, the ALJ employs a five-step sequential evaluation. The claimant bears the burden of proof at steps one through four until it shifts to the ALJ at step five. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). In brief, the ALJ must determine whether the claimant: (1) is "doing substantial gainful activity"; (2) has a "severe" medically determinable impairment or combination of impairments that has lasted more than 12 months; (3) has an impairment that "meets or equals" an impairment listed in appendix 1 of subpart P of 20 C.F.R. § 404; (4) can perform "past relevant work" based on his or her RFC; and (5) "can make an adjustment to other work" based on his or her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).[2]

---

[2] Title II claims are evaluated under 20 C.F.R. Part 404 while Title XVI claims are

## III. ANALYSIS

### A. The ALJ erred in discrediting some medical opinions but not others.

Plaintiff alleges the ALJ erred by rejecting, in whole or part, opinions of treating sources, Drs. Stimson-Riahi and Thompson, and opinions of examining sources, Drs. Palmer and Coelho. (Pl. Br. at 7.) Generally, opinions of treating sources are entitled to the greatest weight; opinions of examining, non-treating sources are entitled to lesser weight; and opinions of non-examining, non-treating sources are entitled to the least weight.[3] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). In assigning weight, the ALJ considers whether the source examined the claimant; the length, frequency, nature, and extent of the treatment relationship (if any); the degree of support the opinion has, particularly from objective medical evidence; the consistency of the opinion with the record as a whole; the source's specialization; and "other factors." 20 C.F.R. §§ 404.1527(c)(1)–(6); *Trevizo*, 871 F.3d at 675. If the ALJ discredits a controverted opinion of a treating or examining source, the ALJ must provide "specific and legitimate" reasons supported by substantial evidence. *Garrison*, 759 F.3d at 1012. An ALJ satisfies the "substantial evidence" requirement by providing a "detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Id.* An ALJ may reject an opinion that is brief, conclusory, and unsupported by objective medical findings. *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014); *see* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

///

---

evaluated under 20 C.F.R. Part 416. Because the regulations are identical, the Court will only cite to Part 404, even though this case is governed by Part 416 as well.

[3] A treating source's opinion is given "controlling weight" when it is "well-supported" by objective medical evidence and is "not inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). This is not the case here.

**1. The ALJ properly rejected the opinion of Plaintiff's treating physician.**

The ALJ gave "little" weight to opinions of Plaintiff's primary care physician, Dr. Sara Stimson-Riahi, M.D.[4] (R. at 29.) Dr. Stimson-Riahi had eight visits with Plaintiff between August 26, 2015 and December 26, 2017.[5] She completed three assessments of Plaintiff's physical abilities. (R. at 539–540 (November 2015), 1067–68 (June 2017), 1457–58 (January 2018).) She opined Plaintiff could sit, stand, or walk for less than 2 hours; would have to change positions every 1-20 minutes with a 10-15 minute break each time; could carry and lift less than 10 pounds; could use her hands and feet for 0-20% of the day; and could bend, reach, and stoop for 0-20% of the day. (R. at 539, 1067, 1457.) Moreover, she opined Plaintiff had "moderately severe" (off-task for 16-20% of the workday) pain, fatigue, dizziness and headaches and would be absent from work at least 4-5 days per month. (R. at 540, 1068, 1458.) She also noted fatigue and somnolence as side effects of her medications. (R. at 1068, 1458.)

The ALJ found Dr. Stimson-Riahi's opinion had "little support" from her treatment notes which were "either incomplete or non-revelatory for significant deficits that might support these extreme limitations." (R. at 29.) The ALJ further found Dr. Stimson-Riahi's opinion was "inconsistent with the available treatment notes" and lacked "explanation for such extreme limitations, or specificity regarding the options that have wide ranges (i.e., changing positions every 1 or every 20 minutes, using her hands 0 percent or 20 percent of the day)." (*Id.*) The ALJ noted that Dr. Stimson-Riahi "does not provide direct treatment of [Plaintiff's] pain, deferring to [Plaintiff's] pain management and other specialists." (*Id.*)

The Court finds these reasons are specific, legitimate, and supported by substantial evidence. *See* 20 C.F.R. §§ 404.1527(c)(2)(ii), (c)(3); *Burrell*, 775 F.3d at 1140. While Dr. Stimson-Riahi's own treatment notes accompanied by treatment notes she received from Plaintiff's pain specialist, Dr. Samara Shipon (R. at 772–74, 791–92), clearly establish that

---

[4] In the decision, the ALJ misstates Dr. Stimson-Riahi's surname as "Stimsonriahl."

[5] R. at 522–28 (August 26, 2015), 523–28 (October 27, 2015), 778–82 (August 15, 2016), 953–55 (November 15, 2016), 948–49 (March 16, 2017), 1036–38 (May 23, 2017), 1373–79 (November 1, 2017), 1443–47 (December 26, 2017).

Plaintiff suffers from chronic pain syndrome and fibromyalgia, the issue here is the degree to which these impairments affect Plaintiff's functional abilities and whether these records support the limitations Dr. Stimson-Riahi opined to in her assessments. As the ALJ correctly noted, neither the assessments nor Dr. Stimson-Riahi's treatment notes (including Dr. Shipon's) support or explain the limitations. They merely document the impairments but do not provide any insight into how the impairments translate into specific functional deficiencies. Moreover, the ALJ did not err in giving lesser weight to Dr. Stimson-Riahi's opinion because she consistently deferred Plaintiff's pain management to other specialists. (R. at 523, 779, 948, 1036, 1379.) Indeed, the only time Dr. Stimson-Riahi treated Plaintiff's pain herself was when she prescribed Cymbalta, which she had also prescribed for Plaintiff's depression and which Plaintiff was noncompliant in taking. (R. at 778, 948.)

**2. The ALJ properly rejected the opinion of Plaintiff's treating psychologist.**

The ALJ gave "little" weight to the opinion of Plaintiff's treating psychologist, Dr. Douglas Thompson, Ph.D. (R. at 24.) In doing so, the ALJ found Plaintiff's major depressive and anxiety disorders were "nonsevere" and "d[id] not cause more than minimal limitation in [her] ability to perform basic mental work activities."[6] (R. at 22.)

Plaintiff began seeing Dr. Thompson on January 1, 2015 upon referral to him from her pain specialist, Dr. Shipon. (R. at 1386, 1389–92.) Dr. Shipon referred Plaintiff to Dr. Thompson to evaluate whether she could be a candidate for a neurostimulator implant procedure from a behavioral health standpoint. (R. at 1214, 1206, 1386.) Following the initial visit, Dr. Thompson wrote to Dr. Shipon, noting that Plaintiff had "extremely high" levels of anxiety and "very high" levels of depression which suggested "unresolved psychiatric disorders which may be contributing to psychogenic pain and/or somatization." (R. at 1386.) He concluded she could be a candidate for the neurostimulator "after she achieves adequate stabilization of her anxiety and depression" and suggested medication adjustments and counseling. (*Id.*) Plaintiff followed up with Dr. Thompson on February

---

[6] *See* 20 C.F.R. § 404.1522(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").

25, 2015 and March 4, 2015. (R. at 1387–88.) Following the March visit, Dr. Thompson wrote to Dr. Shipon, noting improvement of Plaintiff's symptoms following a medication adjustment by her PCP and cleared Plaintiff for the procedure. (R. at 1380.) Plaintiff saw Dr. Thompson again on April 2, 2015 and underwent the procedure on May 13, 2015. (R. at 1384, 510, 953.) Over two and a half years went by until Plaintiff saw him again on November 1, 2017. (R. at 1383.) She also saw him on November 7, 2017. (R. at 1382.)

Two months later, Dr. Thompson completed an assessment of Plaintiff's mental abilities. (R. at 1503–04.) He opined she had impairments that precluded an 8-hour workday; "moderate" (off-task for 11-15% of the workday) limitation in understanding, carrying out, and remembering instructions; and "moderately severe" (off-task for 16-20% of the workday) limitations in responding appropriately to supervision, appropriately to co-workers, and to customary work pressures. (R. at 1503.)

The ALJ found that a "significant treatment relationship" did not exist because Dr. Thompson had only seen Plaintiff twice in the three years prior to the ALJ's decision. (R. at 24.) Moreover, the ALJ found Dr. Thompson's opinions "internally inconsistent and without explanation." (*Id.*) In particular, the ALJ noted that Dr. Thompson had "checked mostly 'mild' effect of symptoms, [but] concluded that her symptoms would preclude an eight-hour day, an extreme limitation that is without narrative explanation." (*Id.*)

The Court finds some of these reasons to be specific and legitimate while others not. A lack of a significant treatment relationship where Plaintiff only saw Dr. Thompson twice in the 36-month period prior to the ALJ's decision (and after the alleged onset date) was a specific and legitimate reason. *See* 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). Likewise, the fact that Dr. Thompson's opinion lacked explanation was a specific and legitimate reason. *See id.* § 404.1527(c)(3). In an attempt to find the explanation, the ALJ looked to Dr. Thompson's treatment notes (R. at 1382–84, 1387–92) but found them to be "limited in number and sparse in content, often handwritten and difficult to read." (R. at 24.) The Court is likewise

unable to extract any insight from the notes for the same reasons.

Plaintiff, however, contends that *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) precludes the ALJ from discrediting Dr. Thompson's opinion, alleging that other evidence in the record supports the limitations. (Pl. Br. at 23.) The *Burrell* court acknowledged that an ALJ may discredit a treating physician's opinion that is "conclusory, brief, and unsupported by the record as a whole *or* by objective medical findings." *Burrell*, 775 F.3d at 1040 (emphasis added). Applying this rule, the court held that the ALJ erred in discrediting a treating source's opinion, even though that opinion–like Dr. Thompson's– was "of the 'check-box' form" and contained "almost no detail or explanation" because the ALJ had overlooked the treating source's "own extensive treatment notes" which supported the opinion. *Id.*

However, *Burrell* is inapplicable because the ALJ here did not commit the same error. Here, the ALJ *did* consider Dr. Thompson's treatment notes but, because of their illegibility and sparseness, was unable to discern any meaningful insight from them. The only legible correspondence from Dr. Thompson are typed reports he completed for Dr. Shipon. (R. at 1385–86, 1380.) While the earlier report may arguably support the limitations where Plaintiff was noted as having high levels of anxiety and depression, it is effectively superseded by the later report where Dr. Thompson noted her symptoms improved with medication and cleared her for the procedure. Thus, because Dr. Thompson's notes and correspondence fail to provide any support for the limitations (or are illegible), the opinion stands properly discredited as brief, conclusory, and unsupported by objective medical findings. *See* 20 C.F.R. § 404.1527(c)(3); *Burrell*, 775 F.3d at 1040.

The Court, however, does not agree that Dr. Thompson's opinion was "internally inconsistent" simply because he opined to "mild" limitations in certain functional areas– areas which mostly concerned her functioning in her personal life–but ultimately concluded her mental impairments precluded an 8-hour workday. The ALJ ignored the fact that Dr. Thompson opined that Plaintiff had "moderately severe" limitations with respect to other functional areas–ones that applied to a work setting–namely: responding appropriately to

supervision, responding appropriately to coworkers, and responding to customary work pressure. These limitations, which, according to assessment, result in her being off-task for 16-20% of the workday, are consistent with the VE's testimony that an individual who is off task 11% of an 8-hour workday would be precluded from sustained work. (R. at 151.)

In conclusion, the ALJ properly rejected Dr. Thompson's opinion by providing specific and legitimate reasons supported by substantial evidence. While not every reason was valid, the Court will not reverse on this basis since the ALJ proffered other reasons that are valid. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (upholding ALJ's credibility determination even though not every reason was valid).

### 3. The ALJ improperly rejected the opinion of the examining physician.

The ALJ gave "partial" weight to the opinion of examining physician, Dr. Richard Palmer, M.D. (R. at 28, 1019–27.) Dr. Palmer opined Plaintiff could stand, walk, or sit for 5 hours; "frequently" (between 1/3 and 2/3 of a workday) lift/carry less than 10 pounds; "occasionally" (up to 1/3 of a workday) lift/carry 10 pounds; "occasionally" climb ramps or stairs but "never" ladders, ropes, or scaffolds; "occasionally" stoop, kneel, crouch, and crawl; "frequently" reach; "frequently" handle, feel, or finger with her right hand; and not work around heights or in extreme temperatures.[7] (R. at 1024–25.) Plaintiff alleges the ALJ erred by failing to provide valid reasons for rejecting the opinion. (Pl. Br. at 21.)

The Court agrees. Nowhere in the decision does the ALJ articulate any reason for rejecting these limitations, much less a specific and legitimate one. The only explicit disregard of the limitations is where the ALJ states, "The undersigned does not give weight to opinions regarding restrictions in other postural activities." (R. at 29.) Contrary to Defendant's assertion, there is no "path" which can "reasonably be discerned" here. (Def. Br. at 16.) Thus, the ALJ clearly erred by failing to provide specific and legitimate reasons.

---

[7] On the other hand, the non-examining state agency physicians, who were also given "partial" weight and whose limitations are predominant in the RFC, opined Plaintiff could sit for 6 hours; "frequently" lift/carry 10 pounds; "frequently" climb ramps and stairs; and "occasionally" climb ladders, ropes, scaffolds. (R. at 28, 228–30, 247–49, 277–79, 305–07.) Plaintiff does not dispute the ALJ's adoption of their opinions.

**4. The ALJ properly evaluated the opinion of the examining psychologist.**

The ALJ gave "partial" weight to the opinion of examining psychologist, Dr. Kari Coelho, Psy.D. (R. at 24, 1006–13.) Plaintiff alleges that Dr. Coelho "expressly" limited her to work involving only "simple" instructions, but not "detailed" instructions. (Pl. Br. at 25.) As such, Plaintiff alleges the ALJ erred in determining she could perform work as a document preparer and call-out operator because those jobs require a level 3 reasoning ability, which exceeds the alleged limitation. (*Id.*)

As part of the consultation, Dr. Coelho was asked to opine to Plaintiff's memory and ability to understand. (R. at 1011.) She noted, "[Plaintiff] did appear capable of understanding and remembering simple instructions during the evaluation." (*Id.*) However, nowhere in the opinion did Dr. Coelho expressly opine to Plaintiff's abilities with respect to detailed instructions. Plaintiff contends that this omission implies that Dr. Coelho restricted Plaintiff to just simple instructions. (Pl. Br. at 25.) The ALJ disagreed, stating that the form asked "only about simple instructions" and "[i]t is unknown how [Dr. Coelho] might have answered questions about more complex instructions." (R. at 24.)

The Court agrees in part and disagrees in part. The Court disagrees with both the ALJ and Plaintiff with respect to what Dr. Coelho was asked to do. She was neither asked to opine to "only simple instructions," as alleged by the ALJ, nor was she asked to opine to "detailed instructions," as alleged by Plaintiff. The instructions were simply, "Please give us [Defendant] a statement of your medical opinion, based on your own substantiated medical findings about what the individual can still do despite his or her impairment(s)." (R. at 1011.) The opinion at issue appears under the heading, "Understanding and Memory: (e.g. the ability to understand and remember simple instructions, detailed instructions and work-like procedures.)." (*Id.*) Thus, the form *suggested*, given the presence of "e.g.," that as part of her opinion, Dr. Coelho *could* opine to Plaintiff's abilities with respect to simple instructions or detailed instructions. The instructions did not specifically *require* her to do one or both. The ALJ's mistaken belief is harmless error. *See Treichler*, F.3d at 1099. The Court does agree that any opinion of Dr. Coelho with respect to Plaintiff's ability to carry

out detailed instructions is speculative because at no point did she *expressly* render an opinion on such. Thus, the ALJ's interpretation of the opinion's literal text was rational.

**B. The ALJ did not err in identifying jobs Plaintiff could perform and did not prevent Plaintiff from developing the record as to the VE's testimony.**

Plaintiff alleges the jobs identified by the ALJ of addresser and call-out operator did not exist in "substantial numbers." (Pl. Br. at 28.) At step five, the ALJ bears the burden of proving that a claimant can adjust to other work existing in "significant numbers in the national economy (either in the region where [a claimant lives] or in several regions in the country)." 20 C.F.R. § 404.1560(c)(1). "Work exists in the national economy when there is a significant number of jobs (*in one or more occupations*) having requirements which [a claimant is] able to meet." *Id.* § 404.1566(b) (emphasis added). Here, based on testimony from the VE, the ALJ found Plaintiff could perform other work as an addresser, call-out operator, or document preparer, which existed in the national economy in numbers of 6,026, 6,531, and 46,532, respectively. (R. at 31, R. at 148–150.) The ALJ therefore satisfied the burden of proving a significant number of jobs *in one or more occupations*. The document preparer position is sufficient. *See Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 529 (9th Cir. 2014) (finding 25,000 jobs sufficient, but a "close call"); *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (finding 64,000 jobs sufficient).

Plaintiff further alleges error on the basis that the ALJ did not proffer a valid reason for allegedly denying record development on how the VE identified these jobs and their numbers. (Pl. Br. at 28.) Prior to the hearing, Plaintiff requested a subpoena to compel the VE to produce various documents and materials relied upon in formulating his testimony. (R. at 495.) Plaintiff maintained these documents were needed "to ascertain whether the number of jobs in the national and regional economy for jobs identified by the VE are verifiable." (*Id.*) The ALJ denied this request, stating that "[a] full and fair hearing does not require access to any and all materials a vocational expert have utilized in presenting testimony or developing his or her expertise." (R. at 14.) The ALJ further stated that Plaintiff "will be provided with the opportunity to question the vocational expert at the

hearing" and "nothing in the objection indicates that [Plaintiff] is unable to properly prepare to question the vocational expert regarding qualifications or basis for the opinion without background materials." (*Id.*) Plaintiff, however, maintains that "no valid reason was made for not allowing record development on the issue" and cites *Biestek v. Berryhill*, 139 S.Ct. 1148 (2019) without analysis or explanation of its applicability.[8] (Pl. Br. at 28.)

The Court finds this argument without merit. At no point did the ALJ prevent Plaintiff from developing the record as to the how the VE reached his conclusions. As correctly stated by the ALJ, the denial of the subpoena did not preclude Plaintiff from questioning the VE about his qualifications and the bases for his opinions. In fact, when Plaintiff was given the opportunity to do so at the hearing, she did not, nor did the ALJ prevent her from doing so. (R. at 150–52.) Thus, it cannot be said that the ALJ did not allow record developing on this issue. Moreover, the Ninth Circuit has held that a "VE's recognized expertise provides the necessary foundation for his or her testimony" and "no additional foundation is required," a rule undisturbed by *Biestek*. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Thus, the Court finds no error.

**C. The ALJ properly rejected Plaintiff's pain and symptom testimony.**

"An ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability."); *see also Molina*, 674 F.3d at 1112. However, unless there is evidence of malingering, an ALJ may only discredit statements regarding pain or symptoms for reasons that are specific, clear, convincing, and supported by substantial evidence. *Garrison*, 759 F.3d at 1014–15. General findings are not sufficient. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Rather, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence

---

[8] In *Biestek v. Berryhill*, the Supreme Court held that a vocational expert's testimony may qualify as "substantial evidence" even where the vocational expert refuses to disclose the materials relied upon in reaching her conclusions. 139 S.Ct. at 1157.

undermines the testimony." *Id.* In doing so, the ALJ need not engage in "extensive" analysis but should, at the very least, "provide some reasoning in order for [a reviewing court] to meaningfully determine whether [her] conclusions were supported by substantial evidence." *Brown-Hunter*, 806 F.3d 487, 495 (9th Cir. 2015).

The ALJ may consider the effectiveness of medication and treatments. 20 C.F.R. §§ 404.1529(c)(3)(iv)–(v); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling."). The ALJ may also consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *see* 20 C.F.R. § 404.1530(b); *Fair*, 885 F.2d at 603 (stating that a claimant's failure to assert one "good" reason for failing to follow a prescribed course of treatment "can cast doubt on the sincerity of the claimant's pain testimony"). Lastly, the ALJ may consider a lack of objective evidence but may not discredit a claimant's testimony solely on that basis. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

**1. A lack of objective evidence did not justify discount of Plaintiff's testimony.**

The ALJ noted that Plaintiff's neurosurgeon, Dr. Vikram Kumar, M.D., "observed no clear explanation for reported symptoms [and] noted there was no evidence of limiting weakness or myelopathy." (R. at 27, citing R. at 717, 1322–24.) The ALJ further noted, "Updated objective imaging, while demonstrative of degenerative disc disease, did not account for her complaints, without significant stenosis of nerve root compression." (R. at 27, citing R. at 1359–60, 1313, 1348.)

The Court does not find this lack of objective evidence to be a clear and convincing reason to discredit Plaintiff. The ALJ overlooked the fact that Plaintiff suffers from fibromyalgia, "a disease that eludes [objective] measurement," which the ALJ found was a "severe" impairment. *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (finding ALJ erred by effectively requiring objective evidence for fibromyalgia). Thus, because Plaintiff has a condition that cannot be measured objectively, the lack of supporting objective evidence does nothing to undermine her complaints of pain.

### 2. Plaintiff's treatments were effective in managing her pain, which suggests her pain and symptoms were not as severe as alleged.

The ALJ noted "improvement and improved functionality" from treatment. (R. at 27.) Specifically, the ALJ noted that insertion of a dorsal column stimulator "appeared effective and successful until late 2017." (*Id.*, citing R. at 510–21, 529, 717–19.) The ALJ also noted Plaintiff reported 80% relief with injections and up to 50% relief of pain and increase in function from her medication regimen. (R. at 27, citing R. at 920–23, 1317–21.) Moreover, the ALJ noted Plaintiff made progress with occupational therapy. (R. at 27, citing R. at 1323–34, 1462–93, 1512–15.) Because substantial evidence supports that Plaintiff had improvement from medication and treatment, the ALJ did not err in finding that her pain and symptoms were not as severe as alleged. *See Warre*, 439 F.3d at 1006.

### 3. Plaintiff was noncompliant with treatment and recommendations, which suggests her pain and symptoms were not as severe as alleged.

The ALJ noted that Dr. Stimson-Riahi "emphasized the benefits of using CPAP for not only obstructive sleep apnea, which might contribute to the claimant's reports of unrelenting fatigue, but also overall pain, anxiety, and fibromyalgia." (R. at 28, citing R. at 778–82.) Dr. Stimson-Riahi prescribed the CPAP mask for Plaintiff's fibromyalgia, noting that it would help with her overall pain. (R. at 523.) More than once, she noted Plaintiff was noncompliant. (R. at 779, 1036.) Plaintiff's excuse was that she could not fit the machine in her bedroom; however, Dr. Stimson-Riahi noted that Plaintiff's husband wore his CPAP mask "faithfully." (R. at 779.) The Court finds this noncompliance is a clear and convincing reason to discredit testimony because Plaintiff's failure to comply with the prescribed treatment suggests her pain is not as severe as alleged.[9]

Moreover, the ALJ noted that while both Dr. Stimson-Riahi and Dr. Shipon recommended counseling to Plaintiff to help her manage her depression and anxiety, she did not follow through until late 2017, "when it was ultimately unhelpful." (R. at 28, citing

---

[9] Additionally, the Court notes that Plaintiff was also noncompliant in taking her Cymbalta, which Dr. Stimson-Riahi also prescribed for her pain. (R. at 948.)

R. at 773, 778–82, 948–49, 943.) However, there are multiple instances in the record, including at the hearing, where Plaintiff stated that cost or insurance issues were barriers to seeking mental health services. (R. at 141–42, 779, 1318, 1340.) Thus, the Court does not find Plaintiff's failure here to be a clear and convincing reason to justify discounting her testimony. *See Warre*, 439 F.3d at 1006 ("[B]enefits may not be denied to a disabled claimant because of a failure to obtain treatment that the claimant cannot afford.").

Lastly, the ALJ noted that Dr. Shipon encouraged "low impact exercises," including "walking, swimming, exercise bike, and elliptical trainer," to improve Plaintiff's fibromyalgia and diabetes. (R. at 28, citing R. at 773.) Plaintiff's endocrinologist, Dr. Sathya Jyothinagaram, similarly encouraged walking more and cutting back on food portions. (R. at 28, citing R. at 1409.) Dr. Jyothinagaram noted, "[Plaintiff's] main problem appears to be poor food choices and portions. She tends to eat a lot of fast food and simple carbohydrates." (R. at 28, R. at 1410–11, 1423.) The ALJ concluded, "While an individual need not follow every single physician instruction to the letter to be deemed disabled under the Social Security Act, in this case the undersigned finds the noncompliance in spite of medical advice regarding the benefits of the recommendations inconsistent with the reports of extreme functional limitation." (R. at 28.)

The Court finds this reason is clear and convincing. While Plaintiff contends failing to follow treatment for obesity "'rarely' affects disability determinations," referring to SSR 02-1p, *9, 2002 WL 34686281 (September 12, 2002), the recommendations here regard Plaintiff's diabetes, fibromyalgia, and pain–not her obesity. (Pl. Br. at 27.) SSR 12-2p, which pertains to fibromyalgia, provides that the ALJ may consider: "a person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms." *5, 2012 WL 3104869 (July 25, 2012). SSR 14-2p, which pertains to diabetes mellitus, states, "The first line of treatment is management of DM [diabetes mellitus] through diet and exercise." *3, 2014 WL 2472008 (June 2, 2014). Thus, Plaintiff's noncompliance with these instructions

to improve her conditions was a clear and convincing reason to discredit her.

In conclusion, because the ALJ proffered clear and convincing reasons supported by substantial evidence, the Court finds no error in discrediting Plaintiff. While not every reason was valid, the Court will not reverse on this basis since the ALJ proffered other reasons that are valid. *See Carmickle*, 533 F.3d at 1163.

## IV. REMEDY

The credit-as-true rule requires a court to remand for calculation and award of benefits rather than a remand for further proceedings when: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. However, "even [if] all conditions of the credit-as-true rule are satisfied," a court may remand for further proceedings if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021.

Here, the record is fully developed. Dr. Palmer's improperly rejected opinion establishes disability based on his 5-hour sitting limitation. *See* SSR 96-9p, *6, 1996 WL 374185 (July 2, 1996). Thus, each element of the credit-as-true rule is satisfied. However, because of the clear and convincing reasons the ALJ had for discrediting Plaintiff's testimony, the Court finds there is "serious doubt" as to whether Plaintiff is disabled. Thus, a remand for further administrative proceedings is the appropriate remedy here.

**IT IS THEREFORE ORDERED reversing** the decision of the Commissioner of Social Security and **remanding** for further administrative proceedings consistent with this Order.

///

///

///

///

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and terminate this case.

Dated this 22nd day of January, 2020.

　　　　　　　　　　　　　　　　　　*[signature]*
　　　　　　　　　　　　　　　　　　Honorable Steven P. Logan
　　　　　　　　　　　　　　　　　　United States District Judge